IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                          Criminal Case No. 3:24cr94

MAURICE TYQUAN BROWN,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Maurice Tyquan Brown's Motion to Dismiss Under the Speedy Trial Act (the "Motion"). (ECF No. 37.) In the Motion, Mr. Brown contends that his Indictment under 18 U.S.C. § 922(g)(1)[1] should be dismissed because the United States has violated his speedy trial rights. (ECF No 37.) The United States filed a response in opposition, (ECF No. 41), and Mr. Brown replied, (ECF No. 42). This Court held a hearing regarding the Motion. (ECF No. 47.) After the hearing, the parties filed supplemental briefing. (ECF Nos. 55, 56.) Accordingly, this matter is ripe for disposition. For the reasons articulated below, the Court will deny the Motion.

---

[1] Section 922(g)(1) provides:

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\*     \*     \*

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

## I. Factual and Procedural Background

### A.  Factual Background

When considering a motion to dismiss an indictment, "the indictment allegations are presumed to be true," *United States v. Treacy*, 677 F. App'x 869, 873 (4th Cir. 2017), so the Court recounts the following facts from the Indictment.

On or about March 6, 2024, Mr. Brown, "knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm . . . in and affecting interstate and foreign commerce." (ECF No. 1, at 1.)

### B.  Findings of Fact[2]

#### 1.  Months Pass Between Mr. Brown's Indictment and his Initial Appearance in Federal Court

On March 6, 2024, officers of the Richmond Police Department arrested Mr. Brown. (ECF No. 53, at 4:8–13.)  Mr. Brown faced several state charges in connection with his arrest. (ECF No. 53, at 4:14–18.)  On June 25, 2024, a federal grand jury returned an Indictment charging Mr. Brown with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)  On June 26, 2024, "[a] federal detainer was placed on file at the Richmond City Justice Center."[3]  (ECF No. 41, at 1; *see* ECF No. 4.)  On June 27, 2024, all of

---

[2] As noted below, "[t]he Court may . . . 'make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.'" *United States v. Chesapeake Reg'l Med. Ctr.*, —F. Supp. 3d—, 2025 WL 3754210, at *2 (E.D. Va. 2025) (quoting *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997)).  The Court bases its findings of fact on representations made by the parties during the motions hearing, (ECF Nos. 47, 53), and on the exhibits submitted by the parties in the courts of briefing, (*see* ECF Nos. 37, 46, 49, 55, 56).

[3] The United States asserts that the federal detainer was placed on file at the Richmond City Justice Center only in its Response to the Motion to Dismiss.  (ECF No. 41, at 1.)  Neither party has put on the record a document or testimony substantiating the date on which the detainer was placed on file with the Richmond City Justice Center.  But Mr. Brown has not challenged, in

Mr. Brown's state charges were *nolle prossed*. (ECF No. 53, at 4:19–5:3.) Mr. Brown "remained in state custody on a state probation violation." (ECF No. 41, at 1; ECF No. 53, at 13:22–14:6.)

On August 7, 2024, the Hon. Richard B. Campbell of the Circuit Court for the City of Richmond found Mr. Brown "in violation of the terms of his probation and [he] was sentenced to 16 years and 11 months incarceration [in state custody] with 12 years and 11 months [suspended], for an active period of incarceration of four years." (ECF No. 41, at 1–2; ECF No. 53, at 5:8–19.).) "The parties present at the probation violation hearings that day were Mr. Brown and his lawyer,[4] and [later] Special Assistant United States Attorney [("SAUSA")] Katherine Groover. [S]AUSA Groover was acting in her official capacity as an assistant commonwealth attorney as she was the attorney assigned to prosecute the probation violation." (ECF No. 37, at 1; ECF No. 53, at 11:13–21.)

According to the United States, "[p]rior to and during [the August 7, 2024] hearing, [Mr. Brown] was made aware that a federal detainer was in place for the possession of firearm by felon charge currently before this Court." (ECF No. 41, at 2.) During the federal Motions hearing, counsel for the United States clarified the timeline over which the United States made Mr. Brown aware of the federal detainer. First, a Special Agent acting on behalf of the United States informed Mr. Brown of his federal detainer prior to the August 7, 2024 hearing:

> [Counsel for the United States:] I have the case agent here, Michael Kielb, if the Court wants to hear from him.

---

either his filings or during the Motions hearing, the date indicated by the United States. For purposes of addressing the Motion, the Court assumes as true that the United States correctly states that the federal detainer was placed on file with the Richmond City Justice Center on June 26, 2024.

[4] Mr. Brown's attorney at the August 7, 2024 hearing was Lawerence McCall.

I think what the government was alluding to at that portion of the response to this motion is that [Mr. Brown] was obviously indicted federally in June of 2024. And on July 5th of 2024, which I believe was just a few days after the indictment and the detainer was placed on file, Special Agent Kielb went down there to the Richmond City Jail [where Mr. Brown was incarcerated] with a search warrant to obtain [Mr. Brown's] buccal swab, a swab of his cheek that would be utilized for the DNA comparison in this case.

And it is my understanding that Special Agent Kielb would testify that when he did that, he had a conversation with Mr. Brown. Mr. Brown was notably concerned about why he was being swabbed. And so what I understand is that Special Agent Kielb told him, "This is related to the gun charges; you've been federally indicted. There's a detainer on file." And I think Mr. Brown asked him if he would be taken into custody, and [Special Agent Kielb] said, "You've got to finish what you've got going on in the state, and once you're done serving your state time, I'll be back to pick you up or somebody will bring you over into federal custody."

So I think what the government was alluding to when I filed that is that [Mr. Brown] knew [about the federal detainer] even before the August 7th hearing when I stated it in open court at his probation violation hearing, because he had had that conversation with Special Agent Kielb about the fact that he had a federal detainer on file and that he was having his cheek swabbed related to the case that he would be brought over for in federal court.

(ECF No. 53, at 12:9–13:12.)  Counsel for Mr. Brown did not challenge this sequence of events during the federal Motions hearing.[5]

During the August 7, 2024 state probation hearing, counsel for the United States, then acting in her capacity as a prosecutor for the Commonwealth of Virginia, again informed Mr. Brown of his pending federal case. The federal charges were referred to three times during the August 7, 2024 Richmond Circuit Court hearing.

---

[5] Counsel for the United States only *proffered* this information during the hearing and did not otherwise substantiate it through testimony or an exhibit. When the Court asked counsel for Mr. Brown to respond to the United States' description of the conversation between Mr. Brown and Special Agent Kielb, counsel for Mr. Brown responded as follows: "My understanding was [that Mr. Brown was] not served with an indictment or any copy of any paperwork; [he was] just [told] that, 'Hey, you've been charged,' and that was the end of the conversation is my understanding." (ECF No. 53, at 13:17–21.)

First, then-Commonwealth's-Attorney Groover said, "[Mr. Brown] was arrested on those counts in March of last year. He's been indicted on that Richmond offense in federal court. So, that's something he is going to have to deal with separate and apart from this." (ECF No. 49-1, at 17:19—20:16). Second, Mr. Brown's defense counsel, Mr. McCall, referred to the federal charges during that same revocation hearing. Mr. McCall noted that, "[t]here's some other indictments from federal court. No convictions at this particular time." (ECF No. 49-1, at 25:4– 5). And third, Judge Campbell referenced the existence of federal charges when sentencing Mr. Brown on the state probation violation. Judge Campbell said, "I want you to make a clean break. Whether it's here or with whatever you're dealing with federally and decide moving forward. You're a young man." (ECF No. 49-1, at 34:15–17.)

After the initial prosecutor left the United States Attorney's Office, SAUSA Groover was later assigned to the prosecution of this federal case. On May 30, 2025 "the government filed a Petition For Writ of Habeas Corpus Ad Prosequendum, commanding the warden of Greensville Correctional Center to surrender Mr. Brown to federal custody." (ECF No. 37, at 2; *see* ECF Nos. 6, 7.) On June 17, 2025. Mr. Brown made an initial appearance in federal court. (ECF No. 10.) On June 30, 2025, this Court arraigned Mr. Brown. (ECF No. 13.) The Court scheduled jury selection for August 25, 2025, and trial to begin on August 26, 2025. (ECF No. 13.) Trial has since been postponed while the Court considers Mr. Brown's Motion.

On July 1, 2025, the Court issued an Order requiring the parties to file all pretrial motions within fourteen days of the entry of that Order. (ECF No. 14.) On August 15, 2025, weeks after the filing deadline expired, Mr. Brown filed his Motion. (ECF No. 37.) On August 18, 2025, the Court granted Mr. Brown's prior counsel's oral motion to withdraw as counsel and ordered the appointment of Mr. Brown's current counsel. (ECF No. 39.)

On November 20, 2025, the Court held a hearing on the Motion. During the hearing, the Court ordered the parties to file supplemental exhibits and briefing by December 4, 2025. (ECF No. 47; ECF No. 53, at 52:18–53:13.) Both parties filed supplemental briefing and exhibits. (ECF Nos. 49, 55, 56.) The parties have agreed that the speedy trial clock remains paused as a result of the filing of Mr. Brown's Motion. (ECF No. 53, at 43:9–18.)

**2.** **Based on an Unclear Record, the Court Will Presume that Danyell Hyman, a Witness to the Events Leading Up to Mr. Brown's Arrest, Would have Been Available for Subpoena or to Testify Prior to the June 25, 2024 Federal Indictment**

As discussed below, Mr. Brown asserts that he was prejudiced by the delay between his Indictment and his production to federal court because this delay resulted in his inability to contact a witness. (ECF No. 37, at 4.) Mr. Brown asserts that barring the delay, he "may have attempted to call [Danyell Hyman,] the individual he was arrested with on March 6, 202[4] as a witness during trial." (ECF No. 37, at 4.)

The record regarding Ms. Hyman's interactions with the state court system during the time frame relevant to Mr. Brown's Motion is cloudy at best. The record suggests she could or could not have been available to assist in his defense. Given that, during the relevant timeframe, she both appeared in court and was placed in fugitive status, the Court cannot make a definitive finding as to when Ms. Hyman was or was not available.[6] Mr. Brown correctly observes that

---

[6] Taking the briefing and exhibits submitted together, the Court can at best construct the following timeline: Ms. Hyman was arrested on March 6, 2024, the same date as Mr. Brown. (ECF No. 49-3, at 1.) Ms. Hyman's charges in connection with that arrest were resolved on June 27, 2024. (ECF No. 49-3, at 1.) On September 7, 2024, Ms. Hyman was arrested on new charges. (ECF No. 49-3, at 1, 3; ECF No. 55-3, at 1,3.) A hearing was held on September 9, 2024 related to that arrest, which Ms. Hyman may or may not have attended. (ECF No. 49-3, at 2, 4; ECF No. 55-3, at 1, 3.) On February 26, 2025, Ms. Hyman pled guilty to the charges underlying her arrest and was scheduled to begin a sentence on March 19, 2025. (ECF No. 55-3, at 1, 3.) Ms. Hyman may or may not have served any of that sentence. On May 23, 2025, the Commonwealth of Virginia issued a capias warrant for her failure to appear. (ECF No. 49-3, at

"[u]nfortunately, this individual has been in absconding status since June 18, 2025." (ECF No. 37, at 4.) The Court cannot determine whether Ms. Hyman became unavailable in May of 2024, before Mr. Brown was indicted, or in June of 2025, after Mr. Brown was indicted.

Taking a liberal construction of the evidence, the Court must presume that Ms. Hyman was in state custody on September 7, 2024, the date of her second arrest, and present for a state hearing on February 26, 2025, the date of her plea—meaning she would have been available to assist in Mr. Brown's defense on two occasions after his June 25, 2024 federal indictment and before his June 17, 2025 initial appearance in federal court.

### 3. Any Video Capturing the Events Leading to or During Mr. Brown's Arrest Became Unavailable Even Before the Unserved June 2024 Federal Indictment was Returned

Mr. Brown next asserts that he was prejudiced by the delay between his indictment and his production to federal court to schedule trial because this delay resulted in his inability to access video footage available at the time of his arrest. (ECF No. 42, at 6.) In Mr. Brown's supplemental briefing, he reiterates that "the long delay has resulted in the loss of . . . potential access to video from nearby stores, schools or public housing." (ECF No. 56, at 8.) Because Mr. Brown's argument rests in part on the availability of video footage, the Court issues findings of fact with respect to what footage was available.

---

5.) On June 18, 2025, the Commonwealth of Virginia charged Ms. Hyman for another failure to appear. (ECF No. 37-3, at 1.)

Mr. Brown argues that Ms. Hyman only became unavailable as of May 23, 2025, as evinced by the Commonwealth of Virginia's issuance of a capias warrant. But the exhibits filed by Mr. Brown suggest that Ms. Hyman was a "Fugitive" at least as of May 23, 2025. (ECF No. 49-3, at 5.) That is, while these exhibits suggest that Ms. Hyman failed to appear for a hearing on that date, Ms. Hyman might well have been unavailable for longer. But based on the exhibits filed by the parties, it appears Ms. Hyman was present in a Virginia state court on February 26, 2025, when she pled guilty.

On December 4, 2025, the United States filed supplemental briefing, as ordered by the Court during the federal Motions hearing.  (ECF No. 55.)  In its supplemental briefing, the United States asserts that all possible video footage capturing the events leading up to and during Mr. Brown's arrest is accounted for:  "[t]he only . . . cameras located in the area" of the offense consisted of (1) cameras at "the Marketplace 14 who said their cameras delete footage and overwrite every three weeks"; (2) cameras "at MLK Middle School (part of which [the United States] ha[s])"; (3) cameras at "a local spa (which was not open [at the time of Mr. Brown's arrest])"; (4) cameras at "a vape shop (which is new in the last two months)"; and (5) cameras at "the VA Mini Mart (which has cameras that are too far to view the Marketplace 14 parking lot, and erase and overwrite every three days)."  (ECF No. 55, at 6.)

Attached to the United States' supplemental briefing is an unsigned document indicating that Special Agent Kielb contacted the businesses that maintained the camera footage discussed above.[7]  (ECF No. 55-1.)  During the Motions hearing, counsel for Mr. Brown conceded—as he must—that the video he might have sought out in the aftermath of the events leading to Mr. Brown's arrest would have been "limited . . . to a period of 30 days and then [was] limited as well to how long it [is retained] for a similar if not slightly longer period of time for a public housing."  (ECF No. 53, at 24:17–19.)  Given that the date of the offense charged was March 6, 2024, Mr. Brown's counsel therefore conceded that any video footage available in the immediate aftermath of Mr. Brown's arrest would likely have been deleted well before the Grand Jury

---

[7] While this document is unsigned, the Court has no reason to doubt its authenticity or the accuracy of its contents.  Mr. Brown did not claim otherwise.  The Court operates under the assumption that the United States prepared this document for purposes of filing its supplemental briefing.  (*See* ECF No. 55-1, at 1 (indicating that Special Agent Kielb canvassed for video footage on December 3, 2025, one day before the United States' supplemental briefing was due).)

returned Mr. Brown's un-served federal Indictment in June of 2024. In the meantime, Mr. Brown had state-appointed defense counsel who could have sought the video evidence in discovery. In sum, the evidence before the Court suggests any video footage of the events was deleted in the regular course of business, as described in the United States' supplemental briefing. (*See* ECF No. 55, at 5–6.)

## II. Standard of Review

Federal Rule of Criminal Procedure 12[8] allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Mr. Brown challenges his Indictment, arguing that it should be dismissed because the United States failed to bring his case to trial with sufficient speed after his indictment, such that his Sixth Amendment[9] right to a speedy trial has been violated. (ECF No. 37, at 3–4.)

"[I]n deciding a pretrial motion to dismiss the indictment, 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'" *United*

---

[8] Rule 12(b)(1) provides:

(b) Pretrial Motions.

> (1) *In General.* A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits. Rule 47 applies to a pretrial motion.

Fed. R. Crim. P. 12(b)(1).

[9] The Sixth Amendment to the United States Constitution provides, in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.

U.S. Const. amend. VI.

9

*States v. Horma*, No. 3:18CR18 (MHL), 2018 WL 4214136, at \*5 (E.D. Va. Sept. 4, 2018) (quoting *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012)).  Rather, when considering a motion to dismiss an indictment, "the indictment allegations are presumed to be true." *Treacy*, 677 F. App'x at 873 (citing *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014)).  "The Court may, however, 'make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder.'" *United States v. Chesapeake Reg'l Med. Ctr.*, —F. Supp. 3d—, 2025 WL 3754210, at \*2 (E.D. Va. 2025) (quoting *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997)).

### III. Analysis

Mr. Brown argues that his Indictment should be dismissed because the United States failed to bring his case to trial with sufficient speed, such that the United States violated the Speedy Trial Act, 18 U.S.C. § 3161, and the Sixth Amendment.[10]  (ECF No. 37, at 2–4.)  The United States first counters that the Court should deny the Motion because it is untimely.  (ECF No. 41, at 2.)  While Mr. Brown's Motion is untimely, the Court will address its merits because counsel has demonstrated excusable neglect under Federal Rule of Criminal Procedure 45(b).[11]

---

[10] As a preliminary matter, and despite alleging a violation of the Speedy Trial Act, Mr. Brown's Motion analyzes only Mr. Brown's speedy trial right under the Sixth Amendment. Similarly, in his Reply, Mr. Brown insists that "the issues raised regarding the Sixth Amendment are the appropriate inquiry." (ECF No. 42, at 4.) Mr. Brown's Reply makes no argument regarding the Speedy Trial Act. During the federal Motions hearing, counsel for Mr. Brown asserted that he did not "believe there has been a statutory violation." (ECF No. 53, at 15:16–23.) The Court therefore confines its analysis of Mr. Brown's Motion to his Sixth Amendment rights.

[11] Rule 45(b) provides, in relevant part:

(b) Extending Time.

Addressing Mr. Brown's Motion on the merits, the Court concludes that Mr. Brown's Sixth Amendment right to a speedy trial has not been violated. Applying the factors set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Court determines that (1) the delay between Mr. Brown's indictment and his production to federal court was "presumptively prejudicial"; (2) the United States' justification for that delay weighs against it, in that the United States engaged in negligent behavior; (3) Mr. Brown did not make a sufficiently vigorous assertion of his Sixth Amendment rights; and, (4) Mr. Brown has not adequately alleged prejudice resulting from the delay. Balancing these factors, the Court concludes that Mr. Brown's speedy trial right has not been violated.

The Court acknowledges that Mr. Brown's Motion raises a close question. As evidenced by the Court's analysis of the *Barker* factors below, the Court is not aware of any case law with factual circumstances identical to those at issue here. But the balance of the *Barker* factors weighs against Mr. Brown. Therefore, the Court will deny the Motion to Dismiss.

**A.     The Court Will Review the Merits of Mr. Brown's Motion Despite its Untimeliness**

Mr. Brown filed his Motion on August 15, 2025, well after the Court's deadline for filing motions. (*See* ECF No. 14.) Mr. Brown explains that his prior counsel "became aware on July 24, 2025, that Ms. Groover, the Special Assistant United States Attorney currently assigned to this prosecution, represented the Commonwealth in the state probation violation hearing, and

---

(1) *In General.* When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:

* * *

(B) after the time expires if the party failed to act because of excusable neglect.

Fed. R. Crim. P. 45(b)(1)(B).

further that Ms. Groover stated at that hearing that the matter had been adopted by the federal government." (ECF No. 42, at 2.) Mr. Brown further explains that his prior counsel obtained transcripts related to the state probation proceedings on August 12, 2025, and "filed the Motion to Dismiss just as soon as he was able." (ECF No. 42, at 2–3.) Mr. Brown argues that his prior counsel's actions "amount[] to excusable neglect under Federal Rule of Criminal Procedure 45(b)" because "[p]rior counsel learned of pertinent facts after the motions deadline expired; he then worked with reasonable diligence to ensure that the Motion was filed as quickly as possible." (ECF No. 42, at 3.)

The Court must consider several factors in determining whether Mr. Brown has established excusable neglect:

> Courts apply the factors set forth in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993), in determining whether a defendant has shown excusable neglect. Under *Pioneer*, the determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." The factors to be balanced in making this equitable determination include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. These factors, however, "do not carry equal weight; the excuse given for the late filing must have the greatest import."

*United States v. Davis*, No. 23-4102, 2024 WL 3690772, at *2 (4th Cir. Aug. 7, 2024) (some internal citations omitted).

Mr. Brown has established excusable neglect. The government has made no allegation that it has experienced prejudice, and the untimely filing of the Motion did not cause any delay. (ECF No. 42, at 3–4.) Moreover, Mr. Brown's explanation of why his prior counsel filed an untimely motion is satisfactory. The Court will review Mr. Brown's Sixth Amendment speedy trial challenge on its merits.

**B.    Legal Standard:  Sixth Amendment Right to Speedy Trial**

Under the Sixth Amendment, a defendant in a criminal prosecution "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. For a defendant to establish a Sixth Amendment violation of the right to a speedy trial, the defendant must prove that "the Amendment's protections have been triggered by 'arrest, indictment, or other official accusation.'" *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (citing *Doggett v. United States*, 505 U.S. 647, 655 (1992)). After the defendant alleges a violation, "a reviewing court must decide whether the length of the delay triggers a speedy trial inquiry. In that respect, the [Supreme] Court has suggested that we should conduct a full inquiry when such a delay approaches one year." *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (citing *Doggett*, 505 U.S. at 651–52 & n.1).

If the reviewing court determines a speedy trial inquiry is triggered, "[t]he defendant must then show that on balance, four factors weigh in his favor." *Id.* In *Barker v. Wingo*, the United States Supreme Court identified the following four factors a court should consider when determining whether a defendant's right to a speedy trial under the Sixth Amendment has been violated: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972).

However, the Supreme Court has explained that "none of the four factors identified above [are] either a necessary or sufficient condition" to conclude that a defendant was deprived of his or her right to a speedy trial. *Id.* at 533. "[T]hey are related factors and must be considered together" with other relevant circumstances. *Id.*

13

The Court applies each of the four factors to Mr. Brown's Motion. The Court concludes that the first and second *Barker* factors weigh in Mr. Brown's favor, but the third and fourth factors weigh against him. Accordingly, the Court will deny the motion.

### 1. *Barker* Factor One: The Length of the Delay Was Presumptively Prejudicial

The length of the delay between a defendant's indictment and their appearance in federal court "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. "The Supreme Court has counseled that 'postaccusation delay [is] presumptively prejudicial at least as it approaches one year.'" *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652 n.1); *United States v. Pair*, 522 F. Supp. 3d 185, 192 (E.D. Va. 2021), *aff'd*, 84. F.4th 577, 589 (4th Cir. 2023).

The parties agree that the filing of Mr. Brown's Indictment on June 25, 2024, and the filing of the detainer on June 26, 2024 triggered Mr. Brown's Sixth Amendment rights. (ECF No. 41, at 7; ECF No. 42, at 5.) *See also United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995) ("[T]he combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment[.]"). Mr. Brown made his initial appearance on June 17, 2025, "about 8 days shy of one (1) year." (ECF No. 42, at 5.) This delay of nearly one year is presumptively prejudicial. *See Woolfolk*, 399 F.3d at 598 (holding that a post-accusation delay of eight months was presumptively prejudicial). The parties agree. (ECF No. 41, at 7; ECF No. 42, at 5.) Because the length of the delay was presumptively prejudicial, the Court examines the remaining *Barker* factors.

14

**2.**    ***Barker* Factor Two:**
**The United States' Reason for Delay Weighs In Favor of a Speedy Trial Violation**

"[D]ifferent weights should be assigned to different reasons" for post-accusation delay. *Barker*, 407 U.S. at 531. "The reasons for a trial delay should be characterized as either valid, improper, or neutral." *Hall*, 551 F.3d at 272. "On this factor, a reviewing court must carefully examine several issues, specifically focusing on the intent of the prosecution. For example, a deliberate attempt by the prosecution to delay the trial of an accused would weigh heavily against the government, although a valid reason for delay, such as a missing witness, may be justified." *Id.* (citing *Barker*, 407 U.S. at 531). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily." *Barker*, 407 U.S. at 531.

The United States asserts that "[t]he primary reason for the delay was [Mr. Brown's] prosecution in the Richmond Circuit Court on a probation violation." (ECF No. 41, at 8.) The United States argues that "[s]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." (ECF No. 41, at 8 (quoting *United States v. Grimmond*, 137 F.3d 823, 838 (4th Cir. 1998).) But as the United States concedes, "[Mr. Brown's] state court proceedings ended on August 7, 2024 when he was sentenced." (ECF No. 41, at 8.) The United States did not bring Mr. Brown into federal court until it filed its Writ of Habeas Corpus Ad Prosequendum on May 30, 2025. (ECF Nos. 6, 7.) The United States again concedes that it was responsible for "nine months of delay" between the end of Mr. Brown's state court proceedings and the filing of its writ. (ECF No. 41, at 8.)

The United States adds that "the delay was caused by the lead attorney for the Government leaving the office and a new attorney taking over the case, then learning about the

15

writ process.[12]  During the federal Motions hearing, counsel for the United States explained that she joined the United States Attorney's Office in January of 2024, at which point she was unfamiliar with the process of producing a state detainee to federal court for purposes of moving trial forward:

> [Counsel for the United States:]  In all candor to the Court, . . . I actually believed, as someone who's just trying to become familiar with the procedures here, that we had to wait until he was done serving his state sentence.  It wasn't until I had a different case with a different AUSA that we were bringing over a defendant from state custody who was in the middle of serving a state sentence that that attorney informed me that we could do it at any point.
>
> That's when, in May of 2025, I then contacted the appropriate people within the courthouse to ensure that Mr. Brown could be brought over in the same way.  So it is true that he, in fact, was brought over before he had served even half of his state sentence.

(ECF No. 53, at 14:7–19.)

The United States' justification for the delay does not persuade.  First, as Mr. Brown rightfully identifies, "[t]he Special Assistant United States Attorney prosecuting this case, who

---

[12] Counsel for the United States explained that the United States "was waiting for DNA results related to the firearm and magazine in this case." (ECF 41, at 9.).  She explained that, "[o]nce [the United States] learned that [Mr. Brown] would not be immediately coming into our custody in June of 2024, we sought to continue our investigation in any way possible that would strengthen it, and one of those ways was to seek DNA that could be a possible match for that firearm." (ECF No. 53, at 30:16–20.)  It was during this time, on July 5, 2024, that Special Agent Kielb performed a buccal swab on Mr. Brown and informed him of his federal Indictment. (ECF No. 53, at 30:25–31:8.)

But counsel for the United States conceded during the hearing that "we certainly we had the results [from the DNA testing] back before even May [of 2025].  So, if we were simply waiting for the DNA results, we could have brought him over as soon as we had those." (ECF No. 53, at 31:10–13.)  Therefore, the United States' assertion that the delay resulted in part from the United States awaiting DNA results is not compelling.  The Court understands counsel for the United States' remarks at the hearing to indicate that the United States had received the DNA testing results it was "waiting for" well before Mr. Brown's initial appearance on June 17, 2025.

prosecuted the state probation violation hearing, was the prosecutor who signed and presented the instant indictment to the Grand Jury on June 25, 2024." (ECF No. 42, at 5; *see also* ECF No. 1, at 2.) SAUSA Groover has been aware of Mr. Brown's indictment since at least June 25, 2024.

The United States responds that, "[t]hough the Government caused the delay, but did not have an improper motive in doing so, this [*Barker*] factor only slightly weighs against the Government." (ECF No. 41, at 9.) The Court must "focus[] on the *intent* of the prosecution." *Hall*, 551 F.3d at 272 (emphasis added). Mr. Brown has made no showing that the United States intentionally delayed Mr. Brown's appearance in federal court, nor that the United States had any improper motive.

Nevertheless, the United States' failure to secure Mr. Brown's appearance in federal court amounts to negligence. As the Supreme Court has explained, "[a]lthough negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. While negligent, the United States' actions are best categorized as "neutral" reasons for delay. *See Barker*, 407 U.S. at 531 ("A more *neutral* reason such as *negligence* . . . should be weighted less heavily but nevertheless should be considered.") (emphasis added); *Pair*, 522 F. Supp. 3d at 193 ("A more *neutral* reason—such as *negligence*, overcrowded courts, or an understaffed prosecutor's office—also weighs, albeit less heavily, against the government.") (emphasis added), *aff'd*, 84 F.4th 577 (4th Cir. 2023).

As other courts have observed, even if negligence is a "neutral" reason for delay, not all negligent delays are equal. Some courts have characterized the United States' conduct as "gross

17

negligence," depending on the circumstances. *See, e.g., United States v. Alabi*, 786 F. Supp. 3d 905, 920 (D. Md. 2025) (finding "gross negligence" where the United States *ignored* indications that defendant was available for production to federal court); *United States v. Ferreira*, 665 F.3d 701, 704, 705–06 (6th Cir. 2011) (finding "grossly negligent" conduct where the United States "misplaced" documents indicating where the defendant was located). These cases do not provide a clear delineation between what the Court may or may not consider "gross negligence." The United States' conduct here does not cross the threshold into "grossly negligent" conduct, as the United States' delay stemmed from unintentional error.[13]

The Court concludes that the second *Barker* factor weighs against the United States. The United States' negligence in producing Mr. Brown from state to federal court delayed Mr. Brown's trial by months.

### 3.   *Barker* Factor Three: Mr. Brown's Late Assertion of His Speedy Trial Right Weighs Against a Speedy Trial Violation

A defendant's timely assertion of their speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. The Court must examine "[w]hether and how" Mr. Brown asserted his speedy trial right, *Barker*, 407 U.S. at 531, including "the timeliness and vigor of the assertion of the speedy trial guarantee," *Hall*, 551 F.3d at 271. "Failure to assert the right to a speedy trial, and even the explicit waiver of that right, is not dispositive of a Sixth Amendment speedy-trial claim." *Thomas*, 55 F.3d at 150 (citation omitted). "Instead, this is one factor [the Court must] consider based on the circumstances of each individual case." *United States v. Chaudhry*, 162

---

[13] Even if the Court assumes that the United States' conduct was grossly negligent, it would still deny the Motion because, as discussed below, Mr. Brown was not prejudiced by the delay.

F.4th 133, 150 (4th Cir. 2025) (citing *Barker*, 407 U.S. at 528).  "While a defendant bears some responsibility in asserting his right to a speedy trial, the government ultimately faces the burden of proving that a defendant's waiver of that right was knowingly and voluntarily made." *Id.* (citing *Barker*, 407 U.S. at 528–29).

A defendant's failure to assert their speedy trial rights in a timely fashion cannot count against them when they are unaware of the charges against them.  *See Doggett*, 505 U.S. at 534–35 (holding that the defendant "is not to be taxed for invoking his speedy trial right only after his arrest" when he was unaware of the charges against him); *Chaudhry*, 162 F.4th at 150 ("We cannot fault Chaudhry for failing to assert his speedy trial rights during this period when he did not know about the charges pending against him.").

Mr. Brown first asserted his speedy trial right through the Motion on August 15, 2025, eleven days before he was scheduled to go to trial.  (ECF No. 37.)  During the federal Motions hearing, counsel for Mr. Brown argued that, while in state custody prior to June of 2025, Mr. Brown was never fully informed of his pending federal Indictment:

> [I]t sounds like and it seems like the government is arguing that [Mr. Brown] knew [about the federal indictment] and he should have done something about it.  He'd never been served with the indictment.  He'd not been brought here to court.  He'd not been afforded counsel in federal court.  He'd not received a letter that said, "Hey, you're a target of a federal investigation; if you want an attorney, we can appoint somebody to represent you and talk about it."  He was indicted.  He had a conversation [with Special Agent Kielb] sometime in July [of 2024].  He then has a probation violation pending in August [of 2024].  And then nothing happens for another period of ten months.  And so I don't know how he would assert his right to a speedy trial other than in the way in which he did it, which was to be brought here, to request counsel, to be assigned counsel, and to assert that he wished to be tried within the speedy trial, to seek no further delay.

(ECF No. 53, at 18:6–21.)  Counsel for the United States seemingly agreed that, prior to Mr. Brown's initial appearance on June 17, 2025, Mr. Brown might not have known that a federal detainer had been placed in his file with the Richmond City Justice Center:  "if the [Richmond]

jail [was] not telling him" that a federal detainer had been placed in his file, then Mr. Brown "has a fair argument that he didn't know that detainer was sitting in his file."[14] (ECF No. 53, at 34:4–6.)

But counsel for the United States insists that even if officials at the Richmond City Justice Center did not inform Mr. Brown about his federal Indictment, the United States had done so: "Special Agent Kielb told him [about his federal Indictment] on July 5th[, 2024], and then [SAUSA Groover] made it very apparent, wasn't hiding that fact from him in [state] court on August the 7th[, 2024]." (ECF No. 53, at 34:7–9.)

More notably, Mr. Brown attended, with counsel, an August 7, 2024 hearing in the Circuit Court for the City of Richmond. That hearing took place within two weeks of his federal detainer being lodged. The record shows that then-Commonwealth's-Attorney Groover, Mr. Brown's defense counsel, and Virginia Circuit Court Judge Richard B. Campbell *all referred to the existence of the federal charges during the August 7, 2024 hearing*. (ECF No. 49-1, at 17:19–20:16, 25:4–5, 34:15–17.)

That Mr. Brown had been made aware of the federal Indictment by Special Agent Kielb, and in open court—by now-SAUSA Groover, his state defense counsel Mr. McCall, and Judge Campbell—leads to a finding that the third *Barker* factor weighs against him. The August 7, 2024 hearing in Richmond Circuit Court plainly put Mr. Brown on notice that federal charges already were pending. Mr. Brown's present counsel is correct that Mr. Brown had no real access to a federal forum to advocate for his speedy trial right while proceeding in state court. But Mr. Brown did have state-appointed counsel during his state proceedings.

---

[14] Counsel for the United States likewise conceded that while "it's the sheriff's office or the state holding the person that's supposed to let them know [about a federal detainer] . . . that system breaks down all the time." (ECF No. 53, at 34:23–25.)

20

Even assuming Mr. Brown was entirely unable to assert his right to a speedy trial until the United States produced him for his initial appearance on June 17, 2025, Mr. Brown still did not make a timely assertion of his rights. Mr. Brown filed his Motion on August 15, 2025, thirty-one days after the Court's motions deadline and eleven days before he was scheduled to go to trial.[15] (ECF No. 37.) Mr. Brown attended an initial appearance on June 17, 2025 and an arraignment on June 30, 2025. (ECF Nos. 10, 13.) At both of these hearings, SAUSA Groover represented the United States. (*See generally* ECF Nos. 10, 13; *see also* ECF No. 53, at 27:15–17 ("[SAUSA Groover had] been on every appearance in this case, June 17th, June 30th, and every [date] since.").) If the impetus for Mr. Brown's Motion was the realization that SAUSA Groover was the same prosecutor handling his state and federal charges, Mr. Brown has not explained why he or federal defense counsel did not realize during his initial appearance or arraignment in June of 2025 that Ms. Groover acted in both cases, especially if discovery had been produced during that time. More significantly, Mr. Brown has not explained why he failed to *act* on that realization until August of 2025.

Even adopting the assumption that Mr. Brown was unaware of his federal Indictment prior to his initial appearance in June of 2025 (which this record countermands), the Court "do[es] not fault [him] for failing to assert his speedy trial rights before learning of the charges against him." *Chaudhry*, 162 F.4th at 150. But Mr. Brown's "subsequent conduct shows he was not diligent in pursuing his rights." *Id.* Mr. Brown had two months over which to raise to the

---

[15] During the Motions hearing, counsel for Mr. Brown explained that Mr. Brown's prior counsel began investigating SAUSA Groover's involvement in his state and federal cases on July 24, 2025. (ECF No. 53, at 21:6–15.) Mr. Brown's prior counsel obtained transcripts on August 12, 2025 indicating SAUSA Groover's presence at Mr. Brown's August 7, 2024 state probation hearing. (ECF No. 53, at 21:2–15.) Mr. Brown's prior counsel then filed the Motion on August 15, 2025. (ECF No. 37.)

Court his speedy trial claim after his initial appearance, particularly given his emphasis on SAUSA Groover's involvement in his cases. Accordingly, the third *Barker* factor weighs against him. *See also United States v. Murdaugh*, No. 23-4472, 2025 WL 1039417, at *4 (4th Cir. Apr. 8, 2025) (finding assertion of the right untimely because "[b]etween [the defendant's] arraignment and his assertion of his speedy trial right, there were at least three court proceedings where [the defendant] could have invoked that right"); *United States v. Vladimirov*, No. 22-4049, 2023 WL 2535263, at *5 (4th Cir. Mar. 16, 2023) (finding assertion of the right untimely because the defendant filed a motion to dismiss on speedy trial grounds "mere days before his trial"); *United States v. Myrick*, No. 3:22-cr-148 (HEH), 2023 WL 3163775, at *5 (E.D. Va. Apr. 28, 2023) (finding assertion of the right untimely because the defendant "wait[ed] until late in the course of events to assert his right") (quotation omitted).

### 4.  *Barker* Factor Four: Mr. Brown Has Not Demonstrated That He Was Prejudiced by the Delay

Finally, Mr. Brown must demonstrate that the post-accusation delay caused him prejudice. *Barker*, 407 U.S. at 530. "Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* at 532. The Supreme Court has identified three interests to consider in weighing whether post-accusation delay causes a defendant prejudice: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the accused's anxiety and concern; and (3) the limitation of the possibility that the defense will be impaired. *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Mr. Brown alleges prejudice under the third category. Specifically, Mr. Brown asserts that he "may have attempted to call [Danyell Hyman,] the individual he was arrested with on

March 6, 2025 as a witness during trial." (ECF No. 37, at 4.)  In his reply, Mr. Brown clarifies that he "cannot interview the passenger of the vehicle he was purported to be driving and determine whether she has information about his driving, stop, seizure and arrest," and that he "is unable to obtain video footage from any businesses near where he was alleged to have driven in such a manner to warrant stopping his vehicle." (ECF No. 42, at 6.)  The United States Court of Appeals for the Fourth Circuit has identified the unavailability of witnesses or evidence as a cause of post-accusation prejudice.  *See Grimmond*, 137 F.3d at 830 ("We note that Grimmond has not identified any witness that was unavailable as a result of the delay."); *Hall*, 551 F.3d at 273 ("[Defendants] have not identified any witnesses that were unavailable as a result of the delay[.]").

That an important witness and evidence are now unavailable to Mr. Brown would normally push the fourth *Barker* factor in his favor.  But the Court cannot so find because Mr. Brown has not made a showing that, even if Ms. Hyman had been available to him, she would have offered material evidence or testimony contributing to Mr. Brown's defense.  Nor has Mr. Brown demonstrated that any video footage existed at the time of the offense that might have contained information supporting his defense.

      a.     **Mr. Brown was not Prejudiced by the Unavailable Witness Because he has not Demonstrated that the Witness Would have <u>Offered Any Material Information to Support his Defense</u>**

As discussed above in the Court's findings of fact, the Court cannot determine exactly if or when Ms. Hyman became unavailable.  But even if the Court assumes that Ms. Hyman was rendered unavailable to Mr. Brown because of the United States' delay, the Court cannot find that Mr. Brown suffered prejudice.  Counsel for Mr. Brown asserted during the federal Motions hearing that were Ms. Hyman to be made available to Mr. Brown, counsel did not know "what

[Ms. Hyman] would say, whether [she] would tell us what the driving was like, what happened when the stop happened, where anything was located within the vehicle, because the defense doesn't, at the present time, have any ability to speak with her." (ECF No. 53, at 22:24–23:3.) Counsel for the United States responded during the federal Motions hearing that even had Mr. Brown contacted Ms. Hyman, she would not have offered material assistance to his defense because she did not see the events leading up to Mr. Brown's arrest:

> [Ms. Hyman] was, at best, in the vehicle with [Mr. Brown] before he even engaged with the police.  So this offense is an offense that occurred after he has left [his] vehicle, after he has left the presence of Ms. Hyman, and is being chased by the police in a completely different part of that housing area.  If she were to be a witness to anything as it pertained to his possession of a firearm, which is the only count before this Court, I'm not sure what it would be, because she wasn't in the area at the time that he's alleged to have thrown a firearm and possessed that firearm.

(ECF No. 53, at 35:17–36:1.)  And even if Ms. Hyman could offer exculpatory information, "the government didn't learn that [Mr. Brown was] ever interested in [Ms. Hyman] or were looking for her until this motion was filed on August 15th, 2025.  Defense counsel . . . never contacted [the United States] and asked to have the police department find her." (ECF No. 53, at 37:8–12.) Counsel for Mr. Brown, in turn, responded that Ms. Hyman was "an eyewitness.  Maybe not to what the alleged crime is as far as throwing the firearm; she's a witness to what happens all before that.  So any driving that occurred before that, to what police did or said before that." (ECF No. 53, at 41:12–15.)  Counsel for Mr. Brown ultimately argued that, without Ms. Hyman's input, he had lost the ability to file a motion to suppress.  (ECF No. 53, at 42:8–18.)

Mr. Brown has not demonstrated to the Court that Ms. Hyman's unavailability prejudiced him.  Counsel for Mr. Brown argued during the federal Motions hearing that to demonstrate prejudice under the fourth *Barker* factor, Mr. Brown need only show "the *possibility* that the defense will be impaired." (ECF No. 53, at 22:5–6 (emphasis added).)  Not so.  Longstanding

24

Supreme Court and Fourth Circuit precedent holds that Mr. Brown must show actual prejudice, not merely the possibility thereof. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) ("[T]he [lower] court recognized the possibility of 'impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case.' That possibility of prejudice is not sufficient.") (citation omitted); *United States v. Lloyd*, 645 F. App'x 273, 279–80 (4th Cir. 2016) ("We therefore fail to see how [the defendant's] defense was impaired in anything more than a speculative manner, and speculative prejudice will not do.") (citing *Loud Hawk*, 474 U.S. at 315); *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) ("Appellant fails to point to any specific prejudice beyond a generalized assertion [of speedy trial prejudice.]"); *United States v. Brown*, No. 89-5662, 1990 WL 15551, at *1 (4th Cir. Feb. 8, 1990) ("[A]ny prejudice to [the defendant] is purely speculative. Though he claims that a now-deceased potential witness . . . may have been able to offer favorable testimony on his behalf, he is unable to assert this with any assurance.") (per curiam).

Defense counsel's representations indicate that it is unclear what, if anything, Ms. Hyman would offer to Mr. Brown's defense. As Mr. Brown's counsel admitted, it is unclear whether Ms. Hyman "would tell us what the driving was like, what happened when the stop happened, [or] where anything was located within the vehicle." (ECF No. 53, at 22:23–23:3.) To be sure, "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. But the Court is further persuaded that Mr. Brown did not experience prejudice as a result of Ms. Hyman's unavailability because Mr. Brown never sought Ms. Hyman's presence, nor mentioned her to the United States, until the filing of his Motion. Defense counsel's suggestion that Ms. Hyman's unavailability prevented Mr. Brown from filing a motion to

25

suppress is no less speculative; if Mr. Brown were aware of Ms. Hyman's presence at the scene of the offense prior to the filing of the Motion, nothing would have prevented him from seeking out Ms. Hyman before the end of the Court's established period for filing pretrial motions.

The Court concludes that, despite Ms. Hyman's unavailability, Mr. Brown was not prejudiced by the delay.

**b.      Mr. Brown was not Prejudiced by the Unavailable Video Footage Because Any Footage Available on the Date of the Offense was Deleted Before Mr. Brown was Federally Indicted**

Mr. Brown also asserts that he is "unable to obtain video footage from any businesses near where he was alleged to have driven in such a manner to warrant stopping his vehicle." (ECF No. 42, at 6.)  First, Mr. Brown did not seek this evidence in his state court proceeding. And as discussed above in the Court's findings of fact, any such video footage was deleted before Mr. Brown was indicted.  The United States therefore argues that "even if the government had taken custody of [Mr. Brown] on June 27, 2024, which was more than three months after his arrest, the known available footage in the area would not have aided in his defense."  (ECF No. 55, at 6.)  The Court agrees.  Furthermore, Mr. Brown has made no showing that any such video footage would contain mitigating or exculpatory evidence.  He has offered "no testimony or affidavit as to what the footage would have shown if it remained available." *Alabi*, 786 F. Supp. 3d at 925–26; *see also United States v. Andrews*, No. 1:12-cr-100–1, 2015 WL 1345380, at *2 (N.D.W. Va. Mar. 23, 2015) (denying that post-accusation delay caused defendant prejudice on account of unavailable videos because defendant did not "state specifically what mitigating or exculpatory evidence the video footage and the records contain"); *United States v. Gaines*, No. SAG-22-0125, 2025 WL 20024, at *6 (D. Md. Jan. 2, 2025) (denying that post-accusation delay caused defendant prejudice on account of unavailable videos because there was no evidence that

"the videos would be of any particular import"). Again, Mr. Brown cannot show prejudice based on speculative assertions.

Mr. Brown has failed to demonstrate that he suffered prejudice because of the delay. As a result, the fourth *Barker* factor weighs against him.

### 5. Balancing the *Barker* Factors, the Court Finds no Violation of Mr. Brown's Speedy Trial Right

*Barker* factors one and two weigh in Mr. Brown's favor. The delay between Mr. Brown's indictment and his production to federal court was presumptively prejudicial, and the United States' actions leading to that delay were negligent at best. *Barker* factors three and four, in contrast, weigh against Mr. Brown. He neither asserted his speedy trial right in a timely fashion (in state or federal court) nor demonstrated that the delay resulted in actual prejudice to his defense.

Mr. Brown must demonstrate that "on balance, [the] four separate factors weigh in his favor." *Thomas*, 55 F.3d at 148. He has failed to do so. Two of the four factors weigh against him. While the Court acknowledges that the United States' justification for the delay is especially unsatisfactory, Mr. Brown's failure to invoke his Sixth Amendment rights in a timely fashion or to demonstrate prejudice outweighs the first two factors and supports the Court's conclusion that no speedy trial violation occurred.

### 6. Mr. Brown's Cited Caselaw is Inapposite or Supports the Conclusion that Mr. Brown's Speedy Trial Rights Were Not Violated

Finally, Mr. Brown "requests that this Honorable Court review the . . . cases of [*United States v.*] *Canty* and [*United States v.*] *Alabi*, which considered similar claims and resulted in the dismissal of the indictments against the defendants." (ECF No. 56, at 8.) Neither *Canty* nor *Alabi* compel the Court to dismiss Mr. Brown's Indictment.

27

a.    *United States v. Canty* **Does not Persuade the Court that Mr. Brown's Speedy Trial Right was Violated**

In *United States v. Canty*, the court considered factual circumstances distinct from Mr. Brown's. No. 2:12-cr-1, 2019 WL 1031577 (S.D.W. Va. Feb. 27, 2019), *report and recommendation adopted*, *United States v. Canty*, 2019 WL 1017325 (S.D.W. Va. Mar. 4, 2019). Regarding the first *Barker* factor, the defendant experienced a seven-year delay between his indictment and his trial date. *Id.* at *1. A seven-year delay does not readily inform what a court should do after a nine-month delay.

The *Canty* court determined that the second *Barker* factor weighed against the United States because the defendant had been in and out of state custody without contact with the United States. The United States had no plausible justification for failing to produce the defendant: "Despite [the defendant's] numerous contacts with law enforcement and the court system during these last seven years, [d]efendant was never informed of or arrested for the pending charge herein." *Id.* Mr. Brown, in contrast, *was* alerted to his federal Indictment by Special Agent Kielb, SAUSA Groover, and the Richmond Circuit Court.

Regarding the third *Barker* factor, and unlike Mr. Brown, the defendant in *Canty* "raised concerns over the delay in this case at [his arraignment]." *Id.*

Finally, regarding the fourth *Barker* factor, the *Canty* court found that the delay prejudiced the defendant because one individual present at the scene of the crime had since passed away, and the defendant "querie[d] whether he c[ould] locate the remaining witnesses, and if so, whether they would recall anything from *over eight years ago* to assist in his defense." *Id.* (emphasis added). As the Court acknowledges above, a defendant's inability to locate pertinent witnesses could contribute to a showing of prejudice as a result of delay. But the seven-year delay in *Canty* is materially different than the months-long delay at issue here. The

28

*Canty* court acknowledged as much when addressing the seven-year delay before it: "The law presumes [d]efendant is prejudiced in the event of an extensive delay due to the Government's negligence." *Id.* Moreover, the witnesses sought by the defendant in *Canty* were witnesses to the issue at the center of the defendant's case, namely the execution of a search warrant. *Id.* ("[T]he instant case concerns a search warrant executed at a residence . . . where more than ten individuals other than [d]efendant himself were present.") Mr. Brown, in contrast, has not shown how or to what effect Ms. Hyman can speak to any of the events leading to or during his arrest.

All four of the *Barker* factors as applied in *Canty* are either inapposite as applied to Mr. Brown's case or support the Court's conclusion that his speedy trial right was not violated.

      **b.**     ***United States v. Alabi* Does not Persuade the Court that Mr. Brown's Speedy Trial Rights were Violated**

In *United States v. Alabi*, the court also considered distinct factual circumstances. 786 F. Supp. 3d 905 (D. Md. 2025). Regarding the first *Barker* factor, "approximately five years and three months . . . passed since the indictment was filed" before the defendant asserted his speedy trial right. *Id.* at 917. That "uncommonly long delay," *id.*, is not present here.

Moreover, the *Alabi* court characterized the United States' conduct in that case as "gross negligence" because the United States took no actions to produce the defendant to federal court over several years and *ignored* notices that the defendant "was likely present and available for arrest." *Id.* at 918–20. The same is not true here. The United States was aware of Mr. Brown's detention in state custody, but as counsel for the United States stated during the federal Motions hearing, she was unaware that she had authority to produce Mr. Brown to federal court. (ECF No. 53, at 14:7–19.) Counsel for the United States still displayed negligence, as discussed above, but not *gross* negligence as in *Alabi*.

29

Regarding the third *Barker* factor, the *Alabi* court determined that "once Alabi became aware of his charges in January 2023, he bore responsibility for asserting his speedy trial right, and he failed to assert that right for more than two years." *Alabi*, 786 F. Supp. 3d at 922. Similar to Mr. Brown, Alabi "did not assert his right to a speedy trial until he filed his motion to dismiss the Indictment in March 2025—about two and a half months before his trial was scheduled to begin." *Id.* The *Alabi* court determined that the third *Barker* factor weighed against the defendant. So too with Mr. Brown.

Finally, the *Alabi* court determined that the defendant had been prejudiced by the delay because witnesses who testified at his motions hearing failed to remember details about the case because of the passage of time. *Id.* at 923. The court noted that "the *possibility* that stronger recollection by [a witness] would have helped Alabi's defense is sufficient to show prejudice associated with the officer's fading memory." *Id.* at 924 (emphasis added). But the *Alabi* court heard testimony from that witness during its motions hearing and could discern whether the witness's testimony would have been made stronger through stronger recollection. *Id.* The same is not true here. The Court has not heard anything from Ms. Hyman, nor has Mr. Brown offered any concrete indication of what Ms. Hyman might say.

Alabi also argued that he was "prejudiced by the loss of footage from surveillance cameras." *Id.* at 925. The *Alabi* court rejected this argument because the court was "left to speculate whether the lost surveillance footage would have aided the defense in any way. Alabi offer[ed] no testimony or affidavit as to what the footage would have shown if it remained available." *Id.* at 925–26. Mr. Brown's argument here is no different.

All four of the *Barker* factors as applied in *Alabi* are either inapposite as applied to Mr. Brown's case or support the Court's conclusion that his speedy trial right was not violated.

30

## IV.  Conclusion

Mr. Brown raises a close question in a case where this Court would have preferred more transparency from the United States.  But because on balance the *Barker* factors do not weigh in Mr. Brown's favor and the Court sees no prejudice, the Court will deny the Motion.

An appropriate Order shall issue.

Date: 3/20/26
Richmond, Virginia

_____
M. Hannah Lauck
Chief United States District Judge

31